IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

KIMBERLY KILANO, on behalf of herself )
And all other similarly situated, )
 )
                          Plaintiff, )   Case No. 15-cv-1181 (ER)(SN)
 )
v. )
 )
CMSG RESTAURANT GROUP, LLC, d/b/a )
Larry Flynt's Hustler Club, ANTHONY F. )
GRANT, MICHAEL A. GRANT, JOSEPH A. )
SULLO AND JASON MOHNEY )
 )
                          Defendants. )
 )

---

## DECLARATION OF BRIAN SCAVETTA
## IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

BRIAN SCAVETTA, in accordance with 28 U.S.C. § 1746, hereby states and declares as follows:

1.    I am an adult resident of the State of New York.

2.    I am the Manager of CMSG Restaurant Group, Inc., dba *Larry Flynt's Hustler Club* (the "CMSG"). I have been the manager since January 14, 2013.

3.    I make this declaration based on my personal knowledge, CMSG's business records which are created and maintained in the ordinary course of business, and upon my knowledge and experience as CMSG's Manager.

4.    Entertainers desiring to perform at CMSG first audition to perform.  If, after the audition, the manager on duty determines that the entertainer possesses adequate skill to perform at CMSG, she is given to opportunity to apply to perform at CMSG.

5.    The entertainer then is provided with an "Entertainer Application" and a "Business Status Selection by Entertainer" which outlines the differences between performing at CMSG as an "Independent Professional Entertainer" versus "Employee status" and asks her to choose either "I would like to apply to be an Independent Professional Entertainer" or "I would like to apply for a position as an Employee entertainer."

6.    Entertainers, such as Kimberly Kilano, who select to perform as an Independent Professional Entertainer, are provided with a "Dancer Performance Lease" to review and complete.

7.    Once and entertainer completes the Dancer Performance Lease, she is eligible to perform on the premises on the days and times of her choosing.

8.    Attached hereto as Exhibit 1 is a true and accurate copy of the Business Status Selection by Entertainer document for Kimberly Kilano.  She selected "I would like to apply to be an Independent Professional Entertainer" and not "I would like to apply for a position as an Employee entertainer."  She signed and dated the document on November 15, 2012.

9.    Attached hereto as Exhibit 2 is a true and accurate copy of Ms. Kilano's Dancer Performance Lease (the "2012 Agreement" or generically an "Agreement").  The first paragraph of the document states in bold and capital letters:

> **NOTICE: THIS IS A LEGAL CONTRACT.  DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS.  IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER.  ANY NEGOTIATED CHANGES TO THIS CONTRACT SHOULD BE INITIALED BY BOTH PARTIES IN THE MARGIN DIRECTLY NEXT TO THE**

**MODIFICATIONS. WE SUGGEST THAT BEFORE SIGNING THIS CONTRACT, YOU HAVE IT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

10.     The originals of Exhibits 1 and 2 are on 11"x17" paper.

11.     According to CMSG's regularly maintained records, Kimberly Kilano performed on January 22, 2015, for 3.15 hours from 10:51 pm to 2:00am. She next came to CMSG to perform on March 3, 2015.

12.     Up until 2015, the existing Dancer Performance Leases used by CMSG were set to expire on January 31 of each year, near which time CMSG would begin using the next years' Agreements, such Agreements then set to expire on January 31 the next year. The 2015 Agreement, for the first time I am aware of, is set to expire on December 31 of the same year.

13.     When Kilano showed up to perform on March 3, 2015, she did not have a 2015 Agreement on file. She was presented with a "Business Status Selection by Entertainer" document and again selected "I would like to apply to be an Independent Professional Entertainer" and not "I would like to apply for a position as an Employee entertainer." She signed and dated the document on March 6, 2015.

14.     A true and accurate copy of Kimberly Kilano's 2015 Business Status Selection by Entertainer document is attached hereto as Exhibit 3.

15.     On March 6, 2015, Ms. Kilano was also presented with the 2015 Dancer Performance Lease (the "2015 Agreement"). The first paragraph of the 2015 Agreement reads:

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. WE SUGGEST THAT BEFORE SIGNING YOU HAVE THIS CONTRACT REVIEWED BY AN**

3

**ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

16.     A true and accurate copy of Kimberly Kilano's 2015 Dancer Performance Lease is attached hereto as Exhibit 4. She signed and dated the document on March 6, 2015.

17.     Exhibits 1-4 attached hereto, are created and maintained by CMSG in its regular course of business.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

Executed on: April 2 , 2015                 B___ Soto

                                                     Brian Scavetta

4

## BUSINESS STATUS SELECTION BY ENTERTAINER

In light of your desire to perform as an entertainer at this Club, we would like you to select the business arrangement under which you are interested in performing. If the Club decides that it would like to extend to you the opportunity to perform here, you can do so either as: 1) an INDEPENDENT PROFESSIONAL ENTERTAINER; or 2) an EMPLOYEE.

We have listed below some of the general distinctions between performing here as an Independent Professional Entertainer or as an Employee. After reviewing this information, we would like you to select the circumstances under which you would be willing to perform. The Club management expresses **no opinion** on this matter. This is **your choice** to make.

Making this selection does **not** constitute an offer of employment or an offer by the Club to enter into an Independent Professional Entertainer agreement with you. After review of your application documents and qualifications, you will be notified as to whether the Club is interested in permitting you to perform at this location. If it is, you will be offered the ability to enter into the business arrangement that you select at the end of this document.

You are free to consult with any persons of your choice, including attorneys, accountants and/or tax professionals, prior to making this selection. In addition, if you would like to see a copy of the contract that the Club uses for Independent Professional Entertainers (called a "Dancer Performance Lease") prior to making your decision, please just ask and we will be happy to provide you with a copy to review.

### INDEPENDENT PROFESSIONAL ENTERTAINER STATUS         VS.         EMPLOYEE STATUS

1. As an Independent Professional Entertainer, you will enter into a written contract with the Club which will be for a certain period of time; which will specify in writing the rights, duties and obligations of both you and the Club; and which cannot be changed except upon the mutual agreement of both you and Club Management. The Club will not be able to terminate your contract during the specified period except upon the limited reasons identified in the contract.

1. As an Employee, you will not have any contract with the Club. Rather, your employment will be "at will," meaning that your employment can be terminated by the Club at any time, without cause and without prior notice. The Club will have the right to change the terms of your employment at its discretion at any time.

2. As an Independent Professional Entertainer, all of your earnings will come directly from your customers. YOU WILL NOT RECEIVE ANY PAY FROM THE CLUB, EITHER BY WAY OF AN HOURLY WAGE OR A SALARY. You will charge your customers for your dance performances; the money that you receive from them, either by way of dance fees or tips (which are discussed in number 3 immediately below), will be your money to keep; and you will be able to take home that money at the end of the day. In addition, you will pay a fee to the Club for the ability to perform here. You can review a copy of the contract that the Club uses in order to see the current amount of those fees.

2. As an Employee, you will be paid every other Friday on an hourly basis at a rate equal to the current applicable minimum wage (at the time this document was drafted, $7.25 per hour).

3. As an Independent Professional Entertainer, all tips that you earn (gratuities paid by a customer *over and above* the posted dance fees, as well as stage tips) are yours to keep. You will not be required to share your tips, or "tip out," to anyone.

3. You will be required to pay 25% of your tips (gratuities paid by a customer *over and above* the posted dance fees, as well as stage tips) into a "tip pool" that would be distributed to non-dancer tipped employees.

4. As an Independent Professional Entertainer, the dance fees you charge your customers belong to you, and are yours to keep.

4. As an Employee, the dance fees you charge customers belong to the Club. You will have to turn them over to Management before the end of your shift.

5. As an Independent Professional Entertainer, you will be responsible for taking care of and paying all taxes and other withholdings due on your income.

5. As an Employee, the Club will take out of your pay all taxes and other withholdings required by law.

6. As an Independent Professional Entertainer, you keep track of your own income. You do not report your dance fees or tip income to the Club. You can take tax deductions for travel, advertising, makeup, costumes, props, tanning, health clubs, cosmetic surgery, etc., as allowed by law.

6. As an Employee, you must, by law, report ALL of your tip income to the Club. You cannot deduct from your taxes the incidental expenses of your employment. In addition, the Club is required by law to pay to the IRS, out of the wages due to you, taxes owed on your tip income. If you make a substantial amount in tips, this could then result in your receiving a "zero" pay check. If you have questions about this, consult an accountant.

**Scavetta Dec., Exhibit 1**
**"2012 Selection Document"**
**Page 1**

7.      As an Independent Professional Entertainer, you will set your own schedule.  In addition, you can work as many hours per day as you desire, although you will receive no "overtime" pay from the Club.

8.      As an Independent Professional Entertainer, whether you take any breaks, when you take your breaks, and the number and duration of any breaks, are totally up to you.

9.      As an Independent Professional Entertainer, you will only work those days and weeks you select, so the amount of "vacation" time you can take is unlimited. However, you will not receive any paid vacation time.

10.     As an Independent Professional Entertainer, you can perform for whomever you choose, and can reject any customers you want.

11.     As an Independent Professional Entertainer, you will never be required by the Club to give "free" dances to anyone.

12.     As an Independent Professional Entertainer, you will never be required to engage in any Club promotions or advertising.

13.     As an Independent Professional Entertainer, you will have the freedom to choose your own costumes, and you will be required to provide your own costumes.

14.     As an Independent Professional Entertainer, you will determine your own appearance.

15.     As an Independent Professional Entertainer, you will not be given any training.  You will be expected to come to the Club with the necessary skills to perform as an exotic dancer.  You may perform in any lawful manner of your own choosing and you will not have to meet any type of "performance standards" set by the Club.

16.     As an Independent Professional Entertainer, if you are injured at the Club, you will not be covered by Workers' Compensation Insurance, but you can sue the Club, if it is at fault, and your only limits of recovery are those that may be imposed by state law.

17.     As an Independent Professional Entertainer, you will not be entitled to unemployment compensation benefits either if your contract expires or if the Club terminates it early for any of the reasons listed in the agreement.

18.     As an Independent Professional Entertainer, you will be acknowledging that you are not entitled to benefits under the Fair Labor Standards Act (minimum wage and overtime laws), Equal Employment Opportunity laws, or other laws that protect employees.

7.      As an Employee, the Club will select your schedule (both days and times) for you.  In general, the Club will not permit you to work any "overtime" during any week.  However, at the discretion of Management, you may be required to work overtime, and you will be paid time and one-half for any hours that you work during a week in excess of 40 hours.

8.      As an Employee, the Club will determine the time, number and duration of your breaks, consistent with New York Law.

9.      As an Employee, you will be entitled to one week's paid vacation after one year of employment; two weeks' paid vacation after three years of employment; and three weeks' paid vacation after five years of employment.  However, the time of your vacations must be approved by Management in advance.

10.     As an Employee you will be required to perform for all customers.

11.     As an Employee, you may, at the direction of Management, be required to give "free" dances to certain customers.

12.     As an Employee, you may be required to participate in various Club promotions and advertising.

13.     As an Employee, you will be required to wear the costumes selected by the Club, which will provide to you two costumes every three months at the Club's cost.

14.     As an Employee, your appearance must comply with the Club standards.  Management will tell you how to wear your hair, and how your makeup should look.

15.     As an Employee, you will required to undergo dancer training, you must perform consistent with the standards set in that training, and you will be expected to meet certain dance minimum quotas.

16.     As an Employee, if you are hurt at work, your sole recourse against the Club will be for "Worker's Compensation" benefits.  You will not have to prove the Club was at fault, but you will be subject to the limits of that coverage.

17.     As an Employee, if you are fired you may be entitled – if you have worked a sufficient period of time and satisfied other legal requirements – to unemployment compensation benefits.  These benefits are for a fixed period of time and are set by law.

18.     As an Employee, you will be entitled to certain legal protections under the Fair Labor Standards Act, the Equal Employment Opportunity laws, and other laws that protect employees.  You can find out about your rights as an employee by going to, among other places, the websites at:
www.dol.gov/esa/whd/flsa; and
http://www.labor.ny.gov/home

**Scavetta Dec., Exhibit 1
"2012 Selection Document"
Page 2**

AFTER HAVING REVIEWED THE ABOVE AND HAVING CONSIDERED THESE MATTERS:

___X___     I would like to apply to be an Independent Professional Entertainer

_____     I would like to apply for a position as an Employee entertainer

DATED: _11-15-12_

_____
Entertainer's signature

_____
Entertainer's name (please print)

NY.Rev.07.28.10

# DANCER PERFORMANCE LEASE

NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. ANY NEGOTIATED CHANGES TO THIS CONTRACT SHOULD BE INITIALED BY BOTH PARTIES IN THE MARGINS DIRECTLY NEXT TO THE MODIFICATIONS. WE SUGGEST THAT BEFORE SIGNING THIS CONTRACT, YOU HAVE IT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.

This Dancer Performance Lease (referred to as "**Lease**") is entered into by the "**Club**" and "**Entertainer**" for the leasing of certain portions of the "**Premises.**" The "**Club,**" the "**Entertainer,**" and the "**Premises**" are identified on the last page of this **Lease**.

## PURPOSE OF LEASE:

The **Club** operates a bar on the **Premises**, and **Entertainer**, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, desires to lease from the **Club**, jointly together with other similar entertainers and upon the terms contained in this **Lease**, the right to use certain areas of the **Premises** for activities related to the presentation of live dance entertainment to the adult public.

## TERMS OF LEASE:

**Club** and **Entertainer** agree as follows:

1. **Leasing of Premises.** **Entertainer** leases from the **Club** the right during normal business hours to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Club** for the performing of live clothed, semi-nude, and/or nude dance entertainment and related activities, upon the terms and conditions contained in this **Lease**. This **Lease** begins today, and ends on the earlier of: A) January 31, 2013; or B) a termination date as provided for in paragraph 18.

2. **Club's Additional Obligations.** In addition to leasing the **Premises**, the **Club** shall:

   A. Provide to **Entertainer**, at the **Club's** expense, music for use on the **Premises**, lighting, and dressing room facilities;

   B. Pay any and all copyright fees due relative to the music used on the **Premises**; and

   C. Advertise the business in a commercially reasonable manner for the benefit of both **Entertainer** and the **Club**. This does not, however, prohibit **Entertainer** from advertising her services in any manner or fashion she so desires.

3. **Subleasing.** This **Lease** is acknowledged to be personal in nature. This means that **Entertainer** has no right to sublease or to assign any of her rights or obligations in this **Lease** to any other person without the express written consent of the **Club**. However, if **Entertainer** is unable to fulfill her contractual obligations during any scheduled set, **Entertainer** shall have the right to substitute the services of any licensed (if legally required) entertainer who has also entered into a Dancer Performance Lease with the **Club**. Any such substitution shall not, however, relieve **Entertainer** of the rent, lost rent charge and/or contract damage obligations as contained in this **Lease** if a substitute entertainer fails to pay any of those fees due as a result of the substitute's lease obligations.

4. **Non-Exclusivity.** **Entertainer's** obligations under this **Lease** are non-exclusive, meaning that **Entertainer** is free to perform her entertainment activities at other businesses or at locations other than at the **Club's Premises**.

5. **Use of Premises.** **Entertainer** agrees to:

   A. Perform clothed, as well as semi-nude ("topless") or nude (whichever is permitted by law) dance entertainment at the **Premises**;

   B. Obtain, keep in full force and effect, and have in her possession at all times while she is on the **Premises** and available for inspection as may be required by law, any and all required licenses and/or permits. The failure of **Entertainer** to have in her possession a required license and/or permit shall not relieve her of her rent obligations as provided for in this **Lease**;

   C. Not violate any federal, state, or local laws or governmental regulations. **Entertainer** acknowledges, understands and agrees that any conduct by her which is in violation of any such laws or regulations is beyond the scope of her authority pursuant to this **Lease**, and constitutes a breach of the terms of this **Lease**;

   D. Maintain accurate daily records of all income, including tips, earned while performing on the **Premises**, in accordance with all federal, state, and local taxation laws;

   E. Become knowledgeable of all laws and governmental regulations that apply to **Entertainer's** conduct while on the **Premises**; and

   F. Pay for any damages she causes to the **Premises** and/or to any of the

Club's personal property, furniture, fixtures, inventory, stock and/or equipment.

6. **Compliance with Rules.** The **Club** shall have the right to impose such rules upon the use of the **Premises** by **Entertainer** as the **Club** deems necessary in order to ensure that: A) No damage to the **Club's** property occurs; B) the **Premises** are used in a safe fashion for the benefit of all entertainers, patrons, and others; and C) no violations of the law occur.

**Entertainer** agrees to comply with all such rules, as well as with all rules established by a majority vote of all entertainers under lease with the **Club**. No rule of such an informal tenants association shall, however, violate either this **Lease** or any rule established by the **Club**.

7. **Nature of Performance.** The **Club** has no right to direct or control the nature, content, character, manner or means of **Entertainer's** entertainment services or of her performances.

EXCEPT AS MAY IN WRITING BE SPECIFICALLY RELEASED, WAIVED OR TRANSFERRED, SO LONG AS THE RELATIONSHIP BETWEEN ENTERTAINER AND THE CLUB IS THAT OF LANDLORD AND TENANT, ENTERTAINER SHALL OWN AND RETAIN ALL INTELLECTUAL PROPERTY RIGHTS OF HER ENTERTAINMENT PERFORMANCES, INCLUDING BUT NOT LIMITED TO ALL COPYRIGHTS AND RIGHTS OF PUBLICITY. ALL OF THESE RIGHTS BECOME THE PROPERTY OF THE CLUB, HOWEVER, IF THE RELATIONSHIP IS EVER CHANGED TO THAT OF EMPLOYER AND EMPLOYEE.

8. **Costumes.** **Entertainer** shall supply all of her own costumes and wearing apparel, which must comply with all applicable laws. The **Club** shall not control in any way the choice of costumes and/or wearing apparel made by **Entertainer**.

9. **Nature of Business.** **Entertainer** understands: 1) That the nature of the business operated at the **Premises** is that of adult entertainment; 2) that she may be subjected to either full or partial nudity (primarily female) and explicit language; and 3) that she may be subjected to advances by customers, to depictions or portrayals of a sexual nature, and to similar types of behavior. **Entertainer** represents that she is not, and will not be, offended by such conduct, depictions, portrayals, and language, and that she assumes any and all risks associated with being subjected to these matters.

10. **Privacy.** **Entertainer** and the **Club** acknowledge that privacy and personal safety are important concerns to **Entertainer**. Accordingly, the **Club** shall not knowingly disclose to any persons who are not associated with the **Club**, or to any governmental entity, department, or agency, either the legal name of the **Entertainer**, her address, or her telephone number, except upon prior written authorization of the **Entertainer** or as may be required by law.

11. **Entertainment Fees.** In consultation with entertainers who lease space on the **Premises**, the **Club** shall establish a fixed fee for the price of certain performances engaged in on the **Premises** (referred to as "**Entertainment Fees**"). **Entertainer** agrees not to charge a customer less than the fixed price for any such performance unless the **Entertainer** notifies the **Club** in writing of any charges to her customers of a lower amount. Nothing contained in this **Lease**, however, shall limit **Entertainer** from receiving "tips" and/or gratuities over-and-above the established price for such performances. THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR OBTAINING THE SERVICE OF A PERSONAL ENTERTAINMENT PERFORMANCE.

12. **Business Relationship of Parties.**

   A. The parties acknowledge that the business relationship created between the **Club** and **Entertainer** is that of landlord and tenant for the joint and non-exclusive leasing of the **Premises** (meaning that other entertainers are also leasing the premises at the same time), and that this relationship is a material (meaning significant) part of this **Lease**. THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and agree that this **Lease** shall not be interpreted as creating an employer/employee relationship or any contract for employment. ENTERTAINER UNDERSTANDS THAT THE CLUB WILL NOT PAY HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.

   B. The **Club** and **Entertainer** acknowledge that if the relationship between them was that of employer and employee, the **Club** would be required to collect, and would retain, all **Entertainment Fees** paid by customers to **Entertainer** – ENTERTAINER SPECIFICALLY ACKNOWLEDGES THAT IN THE CIRCUMSTANCE OF AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL ENTERTAINMENT FEES WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE CLUB, AND WOULD NOT BE THE PROPERTY OF ENTERTAINER. THE PARTIES ACKNOWLEDGE THAT ENTERTAINER'S RIGHT TO OBTAIN

Scavetta Dec., Exhibit 2
"2012 Agreement"
Page 1

AND KEEP ENTERTAINMENT FEES PURSUANT TO THIS LEASE IS SPECIFICALLY CONTINGENT AND CONDITIONED UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LANDLORD AND TENANT.

Under an employment relationship, **Entertainer** would be paid on an hourly basis at a rate equal to the applicable minimum wage. All wage payments would be subject to all federal, state, and local tax withholding requirements. **Entertainer** would further be entitled to retain "tips" and/or gratuities – *but not* **Entertainment Fees** – that she may collect while performing on the **Premises**, although she will be required to pay 25% of her tips into a "tip pool" that would be distributed to non-dancer tipped employees.

The parties additionally acknowledge that were the relationship between them to be that of employer and employee, **Entertainer's** employment would be "at will" (meaning **Entertainer** could be fired at any time without cause and without prior notice or warning), and that the **Club** would be entitled to control, among other things, **Entertainer's**: Work schedule and the hours of work; job responsibilities; physical presentation (such as make-up, hairstyle, etc.); costumes and other wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations and for other businesses. **Entertainer** hereby represents that she desires to be able to make all of these choices herself and without the control of the **Club**, and the **Club** and **Entertainer** agree by the terms of this **Lease** that all such decisions are exclusively reserved to the control of **Entertainer**.

ENTERTAINER FURTHER SPECIFICALLY REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS SUB-PARAGRAPH 12B, BUT, RATHER, DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS LEASE.

C.  If any court, tribunal, or governmental agency determines, or if **Entertainer** at any time contends, claims, or asserts, that the relationship between the parties is something other than that of landlord/tenant and that **Entertainer** is then entitled to the payment of monies from the **Club**, all of the following shall apply:

   i.  In order to comply with applicable tax laws and to assure that the **Club** is not unjustly harmed and that **Entertainer** is not unjustly enriched by the parties having financially operated pursuant to the terms of this **Lease**, the **Club** and **Entertainer** agree that **Entertainer** shall surrender, reimburse and pay to the **Club**, all **Entertainment Fees** received by **Entertainer** at any time she performed on the **Premises** - all of which would otherwise have been collected and kept by the **Club** had they not been retained by **Entertainer** under the terms of this **Lease** - and shall immediately provide a full accounting to the **Club** of all tip income which she received during that time;

   ii.  Any **Entertainment Fees** that **Entertainer** refuses to return to the **Club** shall be deemed service charges to the customer and shall be accounted for by the **Club** as such. The **Club** shall then be entitled to full wage credit for all **Entertainment Fees** retained by **Entertainer**, and such withheld fees shall therefore constitute wages paid from the **Club** to **Entertainer**. In the event that **Entertainer** refuses to return **Entertainment Fees** to the **Club**, the **Club** shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income consistent with this subparagraph 12(C)(ii); and

   iii.  The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in subparagraph 12B.

D.  If at any time **Entertainer** believes that, irrespective of the terms of this **Lease**, she is being treated as an employee by the **Club** or that her relationship with the **Club** is truly that of an employee, **Entertainer** shall immediately, but in no event later than three business days thereafter, provide notice to the **Club** in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(B) of this **Lease** and applicable law, and shall also within the same time period begin reporting all of her tip income to the **Club** on a daily basis, such tip reporting being required of all tipped employees of the **Club** under the terms of the Internal Revenue Code.

13.  **Taxes.** **Entertainer** shall be exclusively responsible for, and shall pay, all federal, state, and local taxes and contributions imposed upon any income earned by **Entertainer** while performing on the **Premises** (including but not limited to income taxes and social security obligations).

14.  **Scheduling of Lease Dates.** **Entertainer** shall select, at least one week in advance, any and all days that she desires to lease the **Premises** during the following week, and the **Club** shall make the leased portion of the **Premises** available to **Entertainer** during those dates and times, subject only to space availability. Should **Entertainer** desire not to perform on the **Premises** at all during any given week, **Entertainer** shall give the **Club** notice of this at least

one week in advance. Once scheduled, neither **Entertainer** nor the **Club** shall have the right to cancel or change any scheduled performance dates except as may be agreed to by **Entertainer** and the **Club**. For each day that **Entertainer** schedules herself to perform, **Entertainer** agrees to be on the **Premises**, available to perform, for a minimum number of consecutive hours as stated in the "SPECIFICATIONS" section on the last page of this **Lease** (one "set"). During those weeks that **Entertainer** desires to perform, **Entertainer** agrees to lease space at the **Premises** for at least the minimum number of sets per week as stated in the "SPECIFICATIONS" section of this **Lease**. **Entertainer** may be permitted to lease space on the **Premises** on days when she has not scheduled herself to perform, subject to space availability.

If **Entertainer** misses an entire scheduled set, **Entertainer** shall pay to the **Club** as a lost rent charge, a fee for each set missed as stated in the "SPECIFICATIONS" section of this **Lease**, which is to be paid by **Entertainer** to the **Club** no later than by the end of her next set. If **Entertainer** fails to timely commence a scheduled set, **Entertainer** shall pay to the **Club** as contract damages $8.00 for each one-half hour missed up to a maximum of the lost rent charge as stated in the "SPECIFICATIONS" section of this **LEASE**, which is to be paid by **Entertainer** to the **Club** no later than by the end of that set. All lost rent charges and contract damages stated in this **Lease** are established in view of the fact that it would be difficult to determine the exact lost rent or damage incurred as a result of certain breaches of the terms of this **Lease**.

15.  **Rent.** **Entertainer** agrees to pay rent to the **Club** (referred to as "**set rent**") in amounts as stated in the "SPECIFICATIONS" section of this **Lease**. All **set rent** shall be paid immediately upon completion of any set.

16.  **Material Breach by Club.** The **Club** materially breaches this **Lease** by:

   A.  Failing to provide to **Entertainer** the leased portion of the **Premises** on any day as scheduled by **Entertainer**;

   B.  Failing to maintain any and all required licenses and/or permits;

   C.  Failing to maintain in full force any and all leases and subleases with the owner of the **Premises**;

   D.  Failing to maintain in full force all utilities services for the **Premises**;

   E.  Willfully violating any federal, state, or local law or regulation in regard to the operation of the **Club**;

   F.  Violating any public health or safety rules or concerns; or

   G.  Failing to maintain the **Premises** in a safe and orderly manner.

The **Club** shall not be liable for any material breach as set forth in this paragraph 16 due to acts of God or to any other cause beyond the reasonable control of the **Club**.

17.  **Material Breach by Entertainer.** **Entertainer** materially breaches this **Lease** by:

   A.  Failing to maintain any and all required licenses and/or permits;

   B.  Willfully violating any federal, state, or local law or regulation while on the **Premises**;

   C.  Failing to appear for a scheduled set on two or more occasions in any one calendar month;

   D.  Failing to pay any **set rent** when due;

   E.  Failing to timely pay any assessed lost rent charges or contract damages;

   F.  Claiming the business relationship with the **Club** as being other than that of a landlord and tenant; or

   G.  Violating any public health or safety rules or concerns.

18.  **Termination/Breach.** Either party may terminate this **Lease**, without cause, upon thirty (30) days notice to the other party. Upon material breach, the non-breaching party may terminate this **Lease** upon twenty-four (24) hours notice to the other party, or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow **Entertainer** to perform on the **Premises** without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws, regulations, or public health or safety rules or concerns.

19.  **Severability.** In the event that any term, paragraph, subparagraph, or portion of this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the parties that any illegal or unenforceable portion of this **Lease**, to the extent possible, be severable from this **Lease** as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between **Entertainer** and the **Club** is something other than that of landlord and tenant, the relationship between **Entertainer** and the **Club** shall be controlled by the provisions of subparagraphs 12C and 12B.

**Scavetta Dec., Exhibit 2**
**"2012 Agreement"**
**Page 2**

**20.  Governing Law.**  This **Lease** shall be interpreted pursuant to the laws of the State of New York.

**21.  Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs.**

A.  ANY CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AT THE CLUB, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (the "FAA"), AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT.  THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.  THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY, AND ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL, TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARINGS, AND TO CROSS-EXAMINE WITNESSES. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH RUDIMENTARY DUE PROCESS, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW.  THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA.  FOR ANY CLAIMS BASED UPON STATUTORY PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE NEUTRAL ARBITRATOR.  THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THIS AGREEMENT TO ARBITRATE ANY AND ALL CLAIMS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B.  ENTERTAINER AGREES THAT ALL CLAIMS BETWEEN HER AND THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THE CLAIMS OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB. IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF, ENTERTAINER SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

C.  ANY JUDGMENT, ORDER, OR RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS AND REASONABLE ATTORNEY FEES TO THE PREVAILING PARTY.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE TERMINATION OF THIS LEASE.

BECAUSE OF LEGAL RESTRICTIONS, THE CLUB WILL NOT ENTER INTO A LEASE WITH AN ENTERTAINER WHO IS UNDER THE AGE OF 18 / 21 (CIRCLE ONE), AND THIS LEASE IS NULL AND VOID IF ENTERTAINER IS NOT OF SUCH AGE. ENTERTAINER SPECIFICALLY REPRESENTS THAT SHE IS OF THIS LAWFUL AGE OR OLDER, THAT SHE HAS PROVIDED APPROPRIATE IDENTIFICATION VERIFYING HER AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.

BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LEASE; THAT SHE UNDERSTANDS, AND AGREES TO BE BOUND BY, ALL OF ITS TERMS; AND THAT SHE HAS BEEN PERMITTED TO ASK QUESTIONS REGARDING ITS CONTENTS AND HAS BEEN GIVEN THE OPPORTUNITY TO HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.

"CLUB"

"ENTERTAINER"

By: _____
                [signature]

Kimberly A. Tilano
                [signature]

Kimberly A. Tilano
[printed name]

_____ REDACTED _____
[address]

Its: _____
                [position]

_____ REDACTED _____
[address]

"PREMISES"
[Club address]

Dover  N J  07801
[City, state, zip code]

N/A
[Entertainer's license/permit number - if applicable]

[City, state, zip code]

DATE: __11/15/12__

_____ REDACTED _____
[entertainer's I.D. number]

**SPECIFICATIONS**

Each scheduled performance day shall consist of a minimum of _____ consecutive hours (one set).
During those weeks when **Entertainer** desires to perform, **Entertainer** agrees to lease space at the **Premises** for a minimum of _____ sets per week.

Base rent for each day set: $ _____   Base rent for each night set: $ _____
Table dance rent charge: $ _____   (if specialty dance, then $ _____ )
Couch dance rent charge: $ _____   (if specialty dance, then $ _____ )
VIP room rent charge: $ _____
Lost rent charge:  Day set: $ _____   Night set: $ _____

ADDITIONAL PROVISIONS _____
_____
_____
_____
_____

**Scavetta Dec., Exhibit 2
"2012 Agreement"
Page 3**

(3167)
(KRIS)

## BUSINESS STATUS SELECTION BY ENTERTAINER

In light of your desire to perform as an entertainer at this Club, we would like you to select the business arrangement under which you are interested in performing. *If* the Club decides that it would like to extend to you the opportunity to perform here, you can do so either as: 1) an INDEPENDENT PROFESSIONAL ENTERTAINER; or 2) an EMPLOYEE.

We have listed below some of the general distinctions between performing here as an Independent Professional Entertainer or as an Employee. This document is not intended to provide legal or tax advice, and is merely a summary of general information. Please feel free to consult with any persons of your choice, including legal and accounting professionals, on these matters prior to making your selection. In addition, if you would like to see a copy of the contract that the Club uses for Independent Professional Entertainers (called a "Dancer Performance Lease") prior to making your decision, please just ask and we will be happy to provide you with a copy to review.

After reviewing this information, we would like you to select the circumstances under which you would be willing to perform. The Club management expresses **no opinion** on this matter. This is **your choice** to make.

Making this selection does **not** constitute an offer of employment or an offer by the Club to enter into an Independent Professional Entertainer agreement with you. After review of your application documents and qualifications, you will be notified as to whether the Club is interested in permitting you to perform at this location. If it is, you will be offered the opportunity to enter into the business arrangement that you select at the end of this document.

|  INDEPENDENT PROFESSIONAL ENTERTAINER STATUS | VS. | EMPLOYEE STATUS |
|---|---|---|
| 1.     As an Independent Professional Entertainer, you will enter into a written contract with the Club which will be for a certain period of time; which will specify in writing the rights, duties and obligations of both you and the Club; and which cannot be changed except upon the mutual agreement of both you and Club Management. The Club will not be able to terminate your contract during the specified period except upon the limited reasons identified in the contract. |  | 1.     As an Employee, you will not have any contract with the Club. Rather, your employment will be "at will," meaning that your employment can be terminated by the Club at any time, without cause and without prior notice. The Club will have the right to change the terms of your employment at its discretion at any time. |
| 2.     As an Independent Professional Entertainer, all of your earnings will come directly from your customers. YOU WILL NOT RECEIVE ANY PAY FROM THE CLUB, EITHER BY WAY OF AN HOURLY WAGE OR A SALARY. You will charge your customers for your dance performances; the money that you receive from them, either by way of dance fees (discussed in number 4 below) or tips (discussed in number 3 immediately below), will be your money that you will be able to take home at the end of the day. You will, however, pay certain fees to the Club for having the right to perform here, as well as specified administrative charges. You can review a copy of the contract that the Club uses in order to see the current amount of those fees and charges. |  | 2.     As an Employee, you will be paid every other Friday on an hourly basis at a rate equal to the current applicable tip-credited minimum wage. Under such an employment relationship, you would be paid, in accordance with § 203(m) of the Fair Labor Standards Act and applicable state law, the legally permitted "tip-credited" wage (currently $5.65 per hour). The Club would then increase your wages by taking the allowable tip-credit (currently $3.10 per hour); which cannot exceed the amount of tips actually received by you. If, in a workweek, you did not earn at least the full minimum wage through wages and retained tips (currently $8.75 per hour), the Club would pay you the difference so that you would earn the full minimum wage for each hour worked. These "tip credit" provisions would not apply unless you were informed of them. |
| 3.     As an Independent Professional Entertainer, all tips that you earn (gratuities paid by a customer *over and above* the established dance fees, as well as stage tips) are yours to keep. You will not be required to share your tips with, or "tip out," anyone. |  | 3.     As an Employee, you would be entitled to retain all tips that you collect (gratuities paid by a customer *over and above* the posted dance fees as well as stage tips, but *not* the mandatory dance fees you charge for personal performances – see number 4 below), although you will be required to pay 25% of your tips into a "tip pool" that would be distributed to non-dancer tipped employees. |

BCD.TC-New York.Rev.1.23.15

Initials

**Scavetta Dec., Exhibit 3**
**"2015 Selection Document"**
**Page 1**

4.      As an Independent Professional Entertainer, the dance fees you charge your customers belong to you, and are yours to keep, subject only to certain lease and administrative fees.

4.      As an Employee, the dance fees you charge customers belong to the Club.   You will have to turn them over to Management before the end of your shift.

5.      As an Independent Professional Entertainer, you will be responsible for taking care of and paying all taxes and other withholdings due on your income.

5.      As an Employee, the Club will take out of your pay all taxes and other withholdings required by law.

6.      As an Independent Professional Entertainer, you keep track of your own income.  You do not report your dance fees or tip income to the Club.  You can take tax deductions for travel, advertising, makeup, costumes, props, tanning, health clubs, cosmetic surgery, etc., as allowed by law.

6.      As an Employee, you must, by law, report ALL of your tip income to the Club.  You cannot deduct from your taxes the incidental expenses of your employment.  In addition, the Club is required by law to pay to the IRS, out of the wages due to you, taxes owed on your tip income.  If you make a substantial amount in tips, this could then result in your receiving a "zero" paycheck.  If you have questions about this, consult an accountant.

7.      As an Independent Professional Entertainer, you may perform wherever you choose, and may perform at other clubs while you are under contract with this Club.

7.      As an Employee, the Club can prohibit you from performing at other establishments.

8.      As an Independent Professional Entertainer, you will determine the days and time you perform at the Club consistent with the entertainment sessions for which you have contracted.  In addition, you can work as many hours per day as you desire, although you will receive no "overtime" pay from the Club.

8.      As an Employee, the Club will select your schedule (both days and times) for you.   In general, you will be limited to working a maximum of 29 hours per week, and the Club will not permit you to work any "overtime."  However, at the discretion of Management you may be required to work overtime, and you will be paid time and one-half for any hours that you work in excess of 40 in a week (currently $9.65 per hour).

9.      As an Independent Professional Entertainer, whether you take any breaks, when you take your breaks, and the number and duration of any breaks, are totally up to you.

9.      As an Employee, the Club will determine the time, number and duration of your breaks, consistent with state law.

10.     As an Independent Professional Entertainer, you can perform for whomever you choose, and can reject any customers you want.

10.     As an Employee you will be required to perform for all customers.

11.     As an Independent Professional Entertainer, you will never be required by the Club to give "free" dances to anyone.

11.     As an Employee, you may, at the direction of Management, be required to give "free" dances to certain customers.

12.     As an Independent Professional Entertainer, you will never be required to engage in any Club promotions or advertising.

12.     As an Employee, you may be required to participate in various Club promotions and advertising.

13.     As an Independent Professional Entertainer, you will have the freedom to choose your own costumes, and you will be required to provide your own costumes.  However, you are expected to appear in costuming consistent with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

13.     As an Employee, you will be required to wear the costumes selected by the Club, which will provide to you two costumes every three months at the Club's cost.

14.     As an Independent Professional Entertainer, you will determine your own appearance.

14.     As an Employee, your appearance must comply with the Club standards.  Management will tell you how to wear your hair, and how your makeup should look.

BCD.TC-New York.Rev.1.23.15

| | |
|---|---|
| 15.     As an Independent Professional Entertainer, you will not be given any training. You will be expected to come to the Club with the necessary skills to perform as a professional exotic dance entertainer. You may perform in any lawful manner of your own choosing and you will _not_ have to meet any type of "performance standards" set by the Club. | 15.     As an Employee, you will be required to undergo dancer training, you must perform consistent with the standards set in that training, and you will be expected to meet certain dance minimum quotas. |
| 16.     As an Independent Professional Entertainer, you will not be entitled to unemployment compensation benefits either if your contract expires or if the Club terminates it early for any of the reasons listed in the agreement. | 16.     As an Employee, if you are fired you may be entitled – if you have worked a sufficient period of time and satisfied other legal requirements – to unemployment compensation benefits. These benefits are for a fixed period of time and are set by law. |
| 17.     As an Independent Professional Entertainer, the Club will not offer you any form of health insurance. | 17.     As an Employee, if the Club is at any time required to offer certain of its employees health insurance and you qualify, you may, but need not, accept such health insurance so long as you agree to pay the policy premiums up to a maximum of 9.5% of your total income (wages _and_ tips). |
| 18.     As an Independent Professional Entertainer, you will be acknowledging that you are not entitled to benefits under the Fair Labor Standards Act (minimum wage and overtime laws), Equal Employment Opportunity laws, or other laws that protect employees. | 18.     As an Employee, you will be entitled to certain legal protections under the Fair Labor Standards Act, the Equal Employment Opportunity Act, and other laws that protect employees. You can find out about your rights as an employee by going to, among other places, the websites at www.dol.gov/esa/whd/flsa, and www.labor.ny.gov/workerprotection/laborstandards/workprot/ls hmpg.shtm |

AFTER HAVING REVIEWED THE ABOVE AND HAVING CONSIDERED THESE MATTERS:

_____ I would like to apply to be an Independent Professional Entertainer

_____ I would like to apply for a position as an Employee entertainer

DATED: 3/6/2015

_____
Entertainer's signature

_____
Entertainer's name (please print)

BCD.TC-New York.Rev.1.23.15

**Scavetta Dec., Exhibit 3**
**"2015 Selection Document"**
**Page 3**

*Kris"*
*( 3167)*

# DANCER PERFORMANCE LEASE

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.**

This Dancer Performance Lease ("Lease") is entered into by the "**Club**" and "**Entertainer**" (the "parties") to permit **Entertainer** to use certain portions of the "**Premises.**" The "**Club**," "**Entertainer**," and "**Premises**" are identified on the last page of this **Lease.**

## PURPOSE OF LEASE:

The Club operates an entertainment facility on the **Premises.** **Entertainer**, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, desires to obtain the right to use certain areas of the **Premises** for her professional activities.

## TERMS OF LEASE:

**Club** and **Entertainer** agree as follows:

**1. Leasing of Premises/Term.** The **Club** grants to **Entertainer** the right, during normal business hours, to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Club**. This **Lease** begins today and ends on the earlier of: A) December 31, 2015; or B) a termination date as provided for in paragraph 18.

**2. Club's Additional Obligations.** The **Club** shall:

    A. Provide, at its own expense, music for use on the **Premises**, lighting, and dressing room facilities, and pay all copyright fees due relative to that music; and

    B. Reasonably advertise the business for the benefit of both **Entertainer** and the **Club**. This does not, however, prohibit **Entertainer** from advertising her services in any manner she so desires.

**3. Subleasing.** This **Lease** is for **Entertainer's** personal skills and artistic talent. Consequently, **Entertainer** has no right to sublease or to assign any of her rights or obligations in this **Lease** to any other person without the written consent of the **Club**. However, **Entertainer** has the right to substitute the services of any licensed (if legally required) entertainer who has also entered into a Dancer Performance Lease with the **Club**.

**4. Non-Exclusivity.** **Entertainer's** obligations under this Lease are non-exclusive. She is free to perform at any other businesses or venues.

**5. Use of Premises.** **Entertainer** agrees to:

    A. Perform clothed, as well as semi-nude ("topless") or nude (whichever is permitted by law) dance entertainment and to perform in stage rotations;

    B. Obtain, keep in effect, and have in her possession at all times while she is on the **Premises**, any and all required licenses and/or permits;

    C. Not violate any laws (violations of the law are beyond the scope of authority under, and constitute a breach of, this **Lease**);

    D. Maintain accurate daily records of all income, including tips, earned while performing on the **Premises**, in accordance with all taxation laws;

    E. Become knowledgeable of all laws that apply to **Entertainer's** conduct while on the **Premises**; and

    F. Pay for any damages she causes to the **Premises** and/or to any of the **Club's** personal property.

**6. Compliance with Rules.** The **Club** may impose rules upon the use of the **Premises** by **Entertainer** as the **Club** deems necessary in order to ensure that: A) no damage to the **Club's** property occurs; B) the **Premises** are used in a safe fashion for the benefit of all entertainers, patrons, and others; and C) no violations of the law occur. **Entertainer** agrees to comply with all such rules, as well as with all rules established by a majority vote of entertainers under lease with the **Club**.

**7. Nature of Performance and Costuming.** The **Club** has no right to direct or control the nature, content, character, manner or means of **Entertainer's** entertainment services, her performances, or the costumes/wearing apparel she selects. **Entertainer** shall supply all of her own costumes and wearing apparel, which must comply with all applicable laws and shall be in accordance with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

**8. Intellectual Property.** **Entertainer** retains all intellectual property rights to her performances, stage name and likeness, unless assigned by her in writing.

**9. Nature of Business.** **Entertainer** understands: A) That the nature of the **Club's** business is adult entertainment; and B) that she may be subjected to either full or partial nudity (primarily female); explicit language, advances by customers, depictions or portrayals of a sexual nature, and to similar types of behavior. **Entertainer** represents that she is not and will not be offended by, and she assumes any and all risks associated with, being subjected

Page 1 of 5 (DPL-TC.-New York.-Rev.1 23.15)   Date ___3/6/2015___   Initials _____

Scavetta Dec., Exhibit 4
**"2015 Agreement"**
**Page 1**

to such matters.

**10.  Privacy.**  Privacy and personal safety are important concerns to **Entertainer**.  Accordingly, the **Club** shall not knowingly disclose to any persons who are not associated with the **Club**, **Entertainer's** legal name, address, or telephone number, except upon written authorization of the **Entertainer** or as required by law.

**11.  Entertainment Fees.**  In consultation with entertainers who lease space on the **Premises**, the **Club** shall establish fixed fees as the price for certain personal performances ("Entertainment Fees").  **Entertainer** agrees not to charge a customer less than the fixed price for any such performance unless the **Entertainer** notifies the **Club** in writing of any charges to her customers of a lower amount.   Nothing in this **Lease**, however, limits **Entertainer** from receiving tips over-and-above the established price for such performances (**Entertainer** is not required to share her tips with anyone else).   THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE.

**12.  Business Relationship of Parties.**

A.  The parties acknowledge that the business relationship created between them is that of the joint and non-exclusive leasing of certain parts of the **Premises** (meaning that other entertainers are also leasing parts of the **Premises** at the same time).  THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and this Lease shall not be interpreted as creating an employer/employee relationship or any contract for employment.   ENTERTAINER UNDERSTANDS THAT THE CLUB WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.

B.  The Club and **Entertainer** acknowledge that if the relationship between them was that of employer and employee, the **Club** would be required to collect, and would retain, all Entertainment Fees paid by customers to **Entertainer** – ENTERTAINER SPECIFICALLY ACKNOWLEDGING THAT IN AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL **ENTERTAINMENT FEES** WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE **CLUB** AND NOT THE PROPERTY OF **ENTERTAINER.** ENTERTAINER'S RIGHT TO OBTAIN AND KEEP **ENTERTAINMENT FEES** IS SPECIFICALLY CONTINGENT UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LANDLORD AND TENANT.

Under such an employment relationship, Entertainer

would be paid every other Friday, in accordance with § 203(m) of the Fair Labor Standards Act and applicable state law, the legally permitted "tip-credited" wage (currently $5.65 per hour), although for any hours worked over 40 in a week she would be paid an overtime wage (currently $10.30 per hour).  The **Club** would then increase **Entertainer's** wages by the amount of tip income she earned, up to the allowable tip credit (currently $3.10 per hour), which could not exceed the amount of tips actually and ultimately received by the **Entertainer**.  If, in a workweek, Entertainer did not earn at least the full minimum wage (or overtime wage) through wages and retained tips, the **Club** would pay **Entertainer** the difference so that she earned the full minimum wage for each hour worked (currently $8.75 per hour), and the overtime wage for all hours worked in excess of 40.  These "tip credit" provisions would not apply unless Entertainer was informed of them; and by signing this **Lease** Entertainer acknowledges that she has received notice of these provisions.  **Entertainer** would further be entitled to retain all tips - but **not Entertainment Fees** - that she might collect (the **Club** would not retain any portion of her tip income), although she would be required to pay 25% of her tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

The parties additionally acknowledge that were the relationship between them to be that of employer/employee, **Entertainer's** employment would be "at will" (she could be fired at any time without cause and without prior warning), and the **Club** could control, among other things, **Entertainer's**: Work schedule and hours of work; job responsibilities; physical appearance (such as make-up, hairstyle, etc.); costumes/wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations.   ENTERTAINER REPRESENTS THAT SHE DESIRES TO BE ABLE TO MAKE ALL OF THESE CHOICES HERSELF, WITHOUT THE CONTROL OF THE **CLUB**, AND THE PARTIES AGREE THAT ALL SUCH DECISIONS ARE EXCLUSIVELY RESERVED TO HER CONTROL.

ENTERTAINER FURTHER REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB UNDER THE TERMS OUTLINED ABOVE, BUT, RATHER, DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS LEASE.

C.  If any court, tribunal, arbitrator, or governmental agency determines, or if **Entertainer** at any time claims, that the relationship between the parties is one of employment and that **Entertainer** is then entitled to the payment of wages from the **Club**, all of the following shall apply:

i.  In order to comply with applicable tax laws and to assure that the **Club** is not unjustly harmed and that

Scavetta Dec., Exhibit 4
"2015 Agreement"
Page 2

Entertainer is not unjustly enriched by the parties having financially operated pursuant to this Lease, the parties agree that Entertainer shall surrender, reimburse and pay to the Club, all Entertainment Fees received by her at any time she performed on the Premises - all of which would otherwise have been collected and kept by the Club had they not been retained by Entertainer under the terms of this Lease - and shall immediately provide a full accounting to the Club of all tip income which she received during that time;

ii. Entertainer shall immediately remit to the Club 25% of all tips that she earned while performing at the Club, which shall be distributed to non-dancer regularly tipped employees;

iii. Any Entertainment Fees that Entertainer does not return to the Club shall be deemed service charges paid by the customer and shall be accounted for by the Club as such. The Club shall then be entitled to a credit against any wages due in the amount of the Entertainment Fees retained by Entertainer, and such fees shall therefore constitute wages paid from the Club to Entertainer. In such circumstances, the Club shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income; and

iv. The relationship of the parties shall immediately convert to an employment arrangement under the terms in subparagraph 12B.

D. If at any time Entertainer believes that - - irrespective of the terms of this Lease - - she is being treated as an employee by the Club or that her relationship with the Club is truly that of an employee, Entertainer shall immediately, but in no event later than three business days thereafter: i) provide notice to the Club in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(B) and applicable law; and ii) begin reporting all of her tip income to the Club on a daily basis (such tip reporting being legally required of all regularly tipped employees).

13. Taxes. Entertainer is exclusively responsible for, and shall pay, all applicable taxes and contributions imposed upon any income earned by Entertainer while performing on the Premises.

14. Scheduling of Performance Dates. Entertainer shall determine the days when she desires to utilize the Premises (each such day being one "Show Date"). Entertainer may, but need not, select, at least one week in advance, the days she desires to utilize the Premises during the following week. Entertainer may be permitted to lease space on the Premises on days and during weeks when she has not scheduled herself to perform, subject to space availability.

Entertainer contracts to perform during the entertainment

sessions stated in the "SPECIFICATIONS" section of this Lease.

If Entertainer misses an entire scheduled Show Date, she agrees to pay to the Club no later than by the end of her next Show Date, a lost rent charge as stated in the "SPECIFICATIONS" section. Lost rent charges are established in view of the fact that it would be difficult to determine the exact lost rent and damages incurred as a result of such breaches of this Lease.

15. Rent. Entertainer shall pay rent ("Rent") to the Club in amounts stated in the "SPECIFICATIONS" section. Rent shall be paid immediately upon completion of the Show Date for which it is due.

16. Material Breach by Club. The Club materially breaches this Lease by failing to provide to Entertainer the leased portions of the Premises on any day she schedules, or by willfully violating any law governing the operation of the Club. The Club shall not be liable for acts of G-d or other causes beyond its reasonable control.

17. Material Breach by Entertainer. Entertainer materially breaches this Lease by failing to maintain any and all required licenses and/or permits; willfully violating any law while on the Premises; failing to appear for a scheduled Show Date on two or more occasions in any one calendar month; failing to pay any Rent when due; failing to timely pay any assessed lost rent charges; or claiming the business relationship with the Club as being other than that of a landlord and tenant.

18. Termination/Breach. Either party may terminate this Lease, without cause, upon thirty (30) days' notice. Upon material breach, the non-breaching party may terminate this Lease upon twenty-four (24) hours' notice or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow Entertainer to perform on the Premises without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws.

19. Severability. If any provision of this Lease is declared to be illegal or unenforceable, this Lease shall, to the extent possible, be interpreted as if that provision was not a part of this Lease; it being the intent of the parties that such part be, to the extent possible, severable from this Lease as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Entertainer and the Club is something other than that of landlord and tenant, the relationship between Entertainer and the Club shall be controlled by the provisions of subparagraphs 12B and 12C.

20. Governing Law. This Lease shall be interpreted pursuant to the laws of the State of New York.

21. MANDATORY ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS.

A. EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY

Initials

Scavetta Dec., Exhibit 4
"2015 Agreement"
Page 3

BARRED BY THIS PARAGRAPH, ANY CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA"). SUCH ARBITRATION SHALL OCCUR IN THE STATE OF NEW YORK, AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT. THE ARBITRATOR SHALL NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIM, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS. IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS, EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR. EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. THE COSTS OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B.   ENTERTAINER AGREES THAT ALL CLAIMS BY HER AGAINST THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THOSE OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH IT. IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING BARRED BY THESE PROVISIONS, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY.

C.   IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

D.   ANY RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT NOT PRECLUDED BY LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS, INCLUDING REASONABLE ATTORNEY FEES, TO THE PREVAILING PARTY.

E.   THE ARBITRATION PROVISIONS OF THIS PARAGRAPH 21 SUPERSEDE ANY PRIOR ARBITRATION AGREEMENT(S) ENTERED INTO BETWEEN THE CLUB AND THE ENTERTAINER

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE EXPIRATION, TERMINATION, AND/OR CANCELLATION OF THIS LEASE.

22.   **Superceding Effect.**   The execution of this LEASE by the parties shall terminate any similar lease or other similar contract currently in effect between the parties.

Scavetta Dec., Exhibit 4
"2015 Agreement"
Page 4

This **Lease** is immediately terminated if **Entertainer** is not of legal age. **Entertainer** specifically represents that she is of lawful age or older, that she has provided appropriate identification verifying her age, and that such identification is valid and authentic.

BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LEASE; THAT SHE UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF ITS TERMS; AND THAT SHE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.

"CLUB"

CMSG RESTAURANT GROUP, LLC

By: _____
         [signature]

         Brian       Scavette
         [printed name]

Its: _____
         [position]

"PREMISES"

641 W. 51st Street
New York, NY 10019

"ENTERTAINER"

_____
         [signature]

_____
         [printed name]

REDACTED
REDACTED
         [address]

_____
         [city, state, zip code]

_____
[Entertainer's license/permit number] REDACTED

_____
[Entertainer's I.D. number]

DATE: 3/6/2015

## SPECIFICATIONS

Base rent:

$ _____ per **Day** Show Date;          $ _____ per **Night** Show Date

Additional rent (cross out if not applicable):

For each table dance:          $ _____          For each couch dance:          $ _____
For each specialty dance:     $ _____          VIP room rent charge:          $ _____

Scrip use administration charge: _____ %

**Entertainer** contracts to perform during _____ (day or evening) entertainment sessions.

Lost rent charge:   Day Show Date missed: $ _____ ;   Night Show Date missed: $ _____

ADDITIONAL PROVISIONS:

_____
_____
_____
_____
_____

Scavetta Dec., Exhibit 4
"2015 Agreement"
Page 5